IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OLDCASTLE INFRASTRUCTURE, INC.,
a Washington corporation,

              Plaintiff,

   -vs-                                  No.

GREEN-TANNER INDUSTRIAL CONSTRUCTION, LLC,
an Arizona limited liability company; and
LIBERTY MUTUAL INSURANCE COMPANY,
a Massachusetts stock insurance company,

              Defendants.

**COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT
AND FOR MONEY DUE UNDER PAYMENT BOND**

      Comes now the Plaintiff OLDCASTLE INFRASTRUCTURE, INC., by its undersigned attorney, and for its claims against the Defendants, states:

**Jurisdiction and Venue**

      1.     Plaintiff is a corporation organized and existing under the laws of the State of Washington; at all times material herein, Plaintiff was, and is now, qualified and authorized to transact business as a foreign corporation within the State of New Mexico.

      2.     Defendant GREEN-TANNER INDUSTRIAL CONSTRUCTION, LLC, is an Arizona limited liability company, which maintains its registered office and principal place of business within Maricopa County, Arizona.

3.      Defendant LIBERTY MUTUAL INSURANCE COMPANY is a Massachusetts stock insurance company which has transacted the business of insurance within the State of New Mexico.

4.      Plaintiff's claims against the Defendants arise out of the Defendants' transaction of business within the State of New Mexico.

5.      Complete diversity of citizenship exists between the Plaintiff and all Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs; this Court has jurisdiction of this matter pursuant to 28 U.S.C. Sec. 1332.

6.      Each of the Defendants is subject to the personal jurisdiction of this Court.

7.      A substantial part of the events or omissions giving rise to the Plaintiff's claims against the Defendants herein occurred within the State of New Mexico. Venue is proper in this District under the provisions of 28 U.S.C. Sec. 1391(b).

**First Cause of Action**
**[Breach of Contract; Debt and Money Due on Open Account**
**against Defendant Green-Tanner Industrial Construction, LLC]**

8.      The allegations of Paragraphs 1 through 7 inclusive are incorporated by reference.

9.      On or about December 21, 2016, Defendant Green-Tanner Industrial Construction, LLC (hereafter, "Green-Tanner") signed and submitted to Plaintiff its Application for Business Credit in connection with its request for the extension of business credit for sale of construction materials by Plaintiff to Green-Tanner. A copy of the Application for Business Credit, redacted to delete personal identifying information of Green-Tanner and/or its principals, is attached hereto and made a part hereof by reference as **Exhibit A.** The text of the Application

for Business Agreement, is set forth in more legible form for the convenience and reference of the Court and parties as **Exhibit B.** Plaintiff accepted and approved the Application for Business Credit.

10.     Thereafter, on or about November 6, 2020, for valuable consideration, Green-Tanner submitted to Plaintiff a purchase order for construction materials and related items including freight. A copy of the purchase order is attached hereto and made a part hereof by reference as **Exhibit C.** Green-Tanner purchased from Plaintiff, and Plaintiff sold to Green-Tanner, the materials specified in the purchase order. The materials were sold on "net 30" payment terms.

11.     Plaintiff sold and delivered all the construction materials and related items purchased by Green-Tanner and performed all of the terms of its undertaking with Defendant Green-Tanner, or further performance is excused.

12.     Green-Tanner breached the terms of its undertaking with Plaintiff by failing and refusing to pay Plaintiff the remaining balance due for materials and related items sold by Plaintiff despite demand, and Plaintiff has sustained damages as a proximate result of Green-Tanner's breach.

13.      After giving Green-Tanner credit for all payments and lawful offsets to which it is entitled, there remains due and owing to Plaintiff by Green-Tanner a past-due and delinquent balance of $1,193,375.40, as is more fully shown by the itemized statement of Green-Tanner's account with Plaintiff a copy of which is attached hereto and made a part hereof by reference as **Exhibit D.**

14.     Green-Tanner failed to pay its account with Plaintiff despite demand, and Plaintiff has been required to retain its attorney to enforce collection of the account. Plaintiff is therefore entitled to a further award of its reasonable attorney's fees and court and collection costs incurred in collecting the account, pursuant to the terms of the Application for Credit and pursuant to the provisions of Sec. 39-2-2.1 NMSA 1978 (1975), *Collection of open accounts; attorney fees.*

15.     Plaintiff is entitled to a further award of interest on the balance of the account, including prejudgment interest at the rate of 1.5 % per month from and after October 31, 2021, pursuant to the terms of the Application for Credit and pursuant to the provisions of Sec. 56-8-3 and 56-8-5 NMSA 1978.

**Second Cause of Action**
**[Debt and Money Due on Payment Bond, against Defendants**
**Green-Tanner Industrial Construction, LLC and Liberty Mutual Insurance Company]**

16.     The allegations of the First Cause of Action are incorporated herein by reference.

17.     The construction materials and related items which Plaintiff sold to Green-Tanner on credit terms were delivered to Green-Tanner in connection with and for incorporation into a project identified as PO #4, El Paso 1 (46 miles), FY 19 Pedestrian & Vehicle Fence Replacement, Contract No. W912PP19C0018 (the "Project"). The construction materials and related items were furnished to Green-Tanner at or near Columbus, New Mexico, at Green-Tanner's specific instance and request.

18.     For valuable consideration, and in connection with the work to be performed on the Project, Defendant Liberty Mutual Insurance Company, as surety, did execute and Defendant

Green-Tanner Industrial Construction, LLC, as principal procured and submitted that certain Subcontract Payment Bond numbered 609203998 dated December 2, 2020 in the penal sum of $11,372,637.54, conditioned upon the principal promptly making payment of all sums due to all persons supplying labor and material in the prosecution of the work on said bonded Project. A copy of said payment bond is attached hereto and made a part hereof by reference as **Exhibit E.**

19.     Plaintiff furnished all of the materials and related items including delivery, and performed all of the terms of its agreement with Defendant Green-Tanner Industrial Construction, LLC, or further performance is excused, but Defendant Green-Tanner Industrial Construction, LLC breached said agreement by failing and refusing to pay Plaintiff the sum of $1,193,375.40 for materials furnished in the prosecution of said bonded Project.

20.     Plaintiff gave all required notice of its claims for sums due it under the bonded project to the Defendants, as required by the terms of the Subcontract Payment Bond. Despite demand, Defendant Green-Tanner Industrial Construction, LLC as principal and Defendant Liberty Mutual Insurance Company as surety have failed to pay Plaintiff the sums due and owing to it, in breach of the terms and conditions of the payment bond.

21.     This complaint is timely filed within the dates and deadlines specified in the payment bond for the commencement of this action.

22.     As a direct and proximate result of the breach by Defendants Green-Tanner Industrial Construction, LLC and Defendant Liberty Mutual Insurance Company of the terms of the Subcontract Payment Bond, Exhibit E, as aforesaid, Plaintiff has been damaged in the sum of $1,193,375.40  plus interest and its reasonable attorney's fees.

WHEREFORE, premises considered, Plaintiff prays for judgment against the Defendants as follows:

On its First Cause of Action, for judgment against Defendant Green-Tanner Industrial Construction, LLC in the principal sum of $1,193,375.40 plus interest, including prejudgment interest at the rate of 1.5 % per month from and after October 31, 2021, plus Plaintiff's reasonable attorney's fees incurred in this action;

On its Second Cause of Action, for judgment against Defendants Green-Tanner Industrial Construction, LLC and Liberty Mutual Insurance Company and each of them, jointly and severally, in the sum of $1,193,375.40 plus including prejudgment interest at the rate of 1.5 % per month from and after October 31, 2021, plus Plaintiff's reasonable attorney's fees incurred in this action; and

On all Causes of Action, for judgment against the Defendants and each of them for Plaintiff's costs expended herein, and for such other and further relief as the Court may deem just.

Respectfully submitted,

GRAMMER LAW OFFICES, P.C.

By: /s/ David A. Grammer III
      DAVID A. GRAMMER III
*Attorney for Plaintiff*
2730 San Pedro Drive NE – Suite D
Albuquerque, NM   87110
Tel. (505) 883-9880
FAX (505) 255-4121
Email: david@grammerlawoffices.com


Oldcastle Precast

## Application for Business Credit

**NOTE:** This Application for Business Credit is to be used in connection with commercial or business purposes only, and not for the purchase of personal, family or household goods or services. For more information, see Section 28 of the Standard Terms and Conditions. Failure to complete this application completely & legibly will cause a delay in processing.

### APPLICANT INFORMATION:

Legal Business Name: Green Tanner Industrial Construction, LLC     DBA

Business Address (street):     725 E. 36th Avenue Suite 3     City: Apache Junction State    AZ    Zip  85119    -

Phone:  480-982-0695     Fax:    480-982-0703     Cell:   480-390-9121     E-mail:  bgreen@greentannerindustrial.com

### BILLING INFORMATION:

Billing Address:  725 E. 36th Avenue Suite 3     City: Apache Junction     State AZ    Zip    85119

Do you require purchase orders?  X  Yes  ___  No     Are you tax exempt?  X  Yes  ___  No

Sales Tax Exemption #:   21045236     State(s):   AZ     please attach an exemption certificate for each state.

Requested Credit Limit:

### ABOUT YOUR COMPANY:

| Individual | Partnership | LLP | C-Corp | S-Corp | L.L.C | Joint Venture |

Business Type:   Electrical Contractor     In Business Since:   2014

Fed-ID # ▮▮▮▮▮     Contractor License #  295789 CR11     Expiration Date: 1/31/2017

Incorporation Date:     State of Incorporation:     UBI #:

A/P Contact: Kim Shellner     Phone: 480-982-0695     E-mail: admin@greentannerindustrial.com

### BONDING / BANK INFORMATION:

Bonding Co.:     Bond #     Amount:

Bonding Co. Address:     Phone #:

Bank Name: Chase Bank Business     Branch & Phone #: Scottsdale, Az  480-970-7148

Bank Account #:     Name of Officer:    Michael Rausch

### PRINCIPAL OFFICERS:

| Title | Name | Social Security # | City/State | Date of Birth | Phone |
|---|---|---|---|---|---|
| CEO | Brian Green | ▮▮▮▮ | Gilbert, AZ | ▮▮/80 | 480-433-7889 |
| Principal | Dallas Tanner | ▮▮▮▮ | Gilbert, AZ | ▮▮/80 | |
| Principal | Maurice Tanner | | Mesa, AZ | | |

### PRINCIPAL SUPPLIERS:

| Type | Name | Account # | City/State | Phone | Fax | Credit Contact |
|---|---|---|---|---|---|---|
| Supplier | Border States Electric | ▮▮4717 | Phoenix, Az | 480-862-0302 | | Rick Carroll |
| Supplier | QED Electric | ▮7049 | Phoenix, AZ | 602-258-1000/480-241-4875 | | Dustin Poly |
| Supplier | Elliott Electric Supply | ▮5924 | Kerrville, TX | 936-715-4037 | | Claudia Sweetwood |

1

Initial

## OLDCASTLE PRECAST STANDARD TERMS AND CONDITIONS:

1. **ENFORCEABILITY/AUTHORIZATION FOR CREDIT REVIEW:** The "Applicant" is submitting this application for credit from Oldcastle Precast, Inc., including companies it now owns or hereafter may come into ownership thereof (hereinafter collectively referred to as the "Seller"). Applicant hereby authorizes Seller to obtain any and all information it deems necessary from any and all sources or references listed on this Application for Business Credit ("Application") and from any credit bureau, creditors of Applicant trade references, banks or other financial institutions. Applicant further authorizes each of such sources, references, credit bureaus, creditors, banks and financial institutions to supply Seller such information as Seller deems necessary to assist it in its consideration of this Application.

2. **ENTIRE AGREEMENT:** These terms and conditions, in combination with the terms and conditions attached to Seller's invoice, purchase order and/or delivery ticket which are incorporated herein by reference (hereinafter collectively referred to as the "Terms"), represent the entire agreement between the parties. Any terms, including those on any Applicant purchase order, which are different, conflicting, add to, modify, supersede or otherwise alter the Terms without express written approval signed by an authorized representative of the Seller are hereby rejected.

3. **PAYMENT TERMS:** If this Application is accepted, Applicant agrees to pay in full the invoice price of all purchases now or hereafter made from Seller promptly when due according to the N30 terms set forth in this APPLICATION, without any retention. If the total invoice price is not paid in full on or before the due date, interest will accrue on the unpaid balance at the greater of 1.5% per month or the maximum rate allowed by the state laws of Seller's principal place of business, whichever is greater. If Applicant should fail to fulfill any of its obligations under this Application, or if Seller in good faith deems itself insecure because the prospect for payment is impaired or the prospect of performance of any provision of this Application is impaired, or if a default occurs for any other reason provided in this Application, then Seller, at its option and without notice, may declare the entire unpaid balance owed by Applicant under this Application to be immediately due and payable, or terminate the credit privileges of Applicant under the Application, or both. Applicant agrees to pay in full all costs and expenses incurred by Seller in collecting the amounts owed by Applicant under this Application, including any and all court costs, attorneys' fees and collection costs. Payments received will be applied against items on unpaid invoices in an order and sequence determined by Seller in its sole discretion. *Checks returned unpaid by your bank are automatically deposited a second time in an effort to clear your payments before they are returned to Seller. Returned checks regardless of the reason, are subject to a service charge in an amount not to exceed applicable law.*

   When you provide payments, you authorize us to either use the information from your check to make an electronic fund transfer (EFT) from your account, or to process the payment as a check transaction. When paying by check, you authorize us or our legal agent to process the check by traditional deposit, electronically (EFT), or through a preauthorized draft. You understand that as this may be an electronic transaction, these funds may be withdrawn from account as soon as the day in which it is received. You will not dispute us debiting your deposit account, so long as the amount corresponds to the amount indicated on the check(s). In the event that the transaction is returned unpaid for any reason, you authorize us or our agent to collect a returned payment fee up to the maximum amount as permitted by law.

4. **CREDIT DISCRETION:** Notwithstanding anything contained herein to the contrary, this Application shall not be construed as imposing any obligation on the part of Seller to furnish credit in any amount, and Seller, in its sole and absolute discretion, may terminate or limit the credit privileges of Application without prior notice to Applicant. The exercise of this discretion shall be in addition to any other right or remedy which Seller may have pursuant to Application or pursuant to applicable law.

5. **BANK AUTHORIZATION:** In order for Oldcastle to acquire the necessary information from your bank, by signing this application you authorize your bank to release the information needed on any or all of your accounts listed above in order to process your credit application.

6. **RETENTION:** If retention is applicable for a project, payment in full for the retention balance will not exceed 45 days from installation. Based in the applicable prompt payment status of the applicable state, a 2% penalty will apply to the outstanding balance each month the retention balance is past due.

7. **DELIVERY OF MATERIALS:** Unless otherwise agreed in writing, prices include delivery F.O.B. Job Site. "F.O.B. Job Site" means trucks carrying maximum legal loads operating under their own power, with delivery as close to the job or accessible storage area as Seller deems practical. Applicant shall provide suitable access for Seller's delivery trucks (without pushing or towing of the truck), traffic control and labor (at least two (2) men) to assist in the off-loading of materials. Applicant agrees that the receiving/installation location will be properly prepared and ready to receive the materials at the time specified in writing. Standby time in excess of one (1) hour from the time of arrival of Seller's trucks at the designated point will be at Applicant's expense and charged to its account.

8. **RISK OF LOSS:** When materials are sold "F.O.B. Plant," delivery of materials therefor shall be accomplished at Seller's plant, and Applicant shall bear all risks of loss, damage, injury or liability associated with transportation and placement of materials. When materials are specified to be sold "F.O.B. Job Site," delivery shall be accomplished at agreed upon Applicant job site, and Applicant bears all risk of loss or damage to the materials once delivered by Seller.

9. **SECURITY INTEREST:** Applicant hereby grants Seller a security interest in all products, materials, component and related parts sold hereunder, whether or not the same become fixtures. Should Applicant fail to pay all or portions of any amounts due and payable hereunder, breach this Application or otherwise default, Seller shall have all rights and remedies as a secured party available to it under law or equity including but not limited to rights of self-help (i.e., without notice) to repossess all or any portion of such materials.

10. **PRE-ENGINEERED PRODUCTS:** Unless otherwise agreed to by Seller in writing, all materials sold by Seller hereunder are pre-engineered products manufactured in accordance with standard catalog data, and are not intended for unusual or specific applications. If Applicant requires specially engineered materials, Applicant must approve in writing all applicable specifications and drawings for such specially engineered materials before Seller will commence production of the same.

11. **WARRANTY, DISCLAIMER LIMITATIONS ON LIABILITY:** Unless otherwise agreed to in writing by both parties, Seller warrants only that, for a period of one (1) year after installation, Seller products or materials sold hereunder shall be free from material defects in workmanship. Any failure by Applicant to timely pay any or all amounts due hereunder shall automatically void this express warranty made by Seller. No agent, employee or representative of Seller has authority to bind Seller to any affirmation, representation or warranty concerning any products or materials sold to Applicant unless and until said affirmation, representation or warranty is expressed in writing and signed by an authorized Seller representation. The description of the goods contained herein is the sole basis for this agreement, and no statements or representations other than those embodied herein have been made or relied upon.

2

*B.S.*
Initial

Exhibit A

EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER DOES NOT MAKE AND SPECIFICALLY EXCLUDES AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS, IMPLIED, OR ARISING BY TRADE USAGE OR COURSE OF DEALING, INCLUDING WITHOUT LIMITATION, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, AND ANY IMPLIED INDEMNITIES.  IN NO EVENT WILL SELLER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE OR INCIDENTAL DAMAGES (INCLUDING BUT NOT LIMITED TO DAMAGES FOR LOST PROFITS, BUSINESS INTERRUPTION, AND LOSS OF BUSINESS INFORMATION) ARISING OUT OF THE USE, INABILITY TO USE OR FAILURE OF ANY MATERIALS OR PRODUCTS SOLD HEREUNDER, EVEN IF SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  ANY DEFECTS CAUSED BY IMPROPER USE, DESIGN, INSTALLATION OR MAINTENANCE VOIDS ANY AND ALL WARRANTIES EXPRESSED OR IMPLIED, AND WHICH OTHERWISE APPLY.   IT IS AGREED THAT SELLER SHALL NOT BE RESPONSIBLE FOR ANY DAMAGES WHICH EXCEED THE INVOICE PRICE OF ANY MATERIALS WHICH ARE DETERMINED TO BE DEFECTIVE OR NON-CONFORMING.

12.  LIMITED REMEDY:  For Defective Products/Materials:  Should the products or materials sold hereunder breach the limited warranty made by Seller in Section 11 above, Applicant must provide written notice to Seller of such breach within forty (48) hours of Applicant's actual knowledge of said defect.  Applicant hereby waives and relinquishes all actions and claims for replacement and repair thereof if Applicant fails to deliver such written notice within the applicable 48-hour period.  Upon Seller's receipt of timely written notice, Seller's sole obligation and Applicant's exclusive remedy shall be the repair or replacement of the defective products or materials within a commercially reasonable period of time.  Under no circumstances shall Seller be liable for any liability, damages or costs due to delays in the approval, delivery or installation of any Seller products or materials.  Applicant understands and agrees that "but for" this limited remedy and Seller's limitations on liability as stated in Section 11 above, Seller would not be able to sell its products and materials to Applicant at the agreed prices and that the warranty disclaimers, the limitations on liability, and the limited remedy described in this Section 11 constitute an agreed allocation of risk between Applicant and Seller.

13.  INDEMNIFICATION:  Applicant agrees to defend, indemnify and hold Seller harmless from and against all claims, losses, damages, penalties, costs and/or expenses for damage to property of whatsoever kind or nature, or injury to persons arising out of performance under this Application by Applicant, its agents or employees.  Applicant's duty to indemnify Seller for liability and/or damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of Seller and Applicant shall apply only to the extent of the negligence of Applicant, its agents or employees.  Applicant's indemnification obligations hereunder shall exclude claims, losses, liabilities, costs or expenses for damage to property of whatsoever kind or nature, or injury to persons arising out of performance under this Agreement from the sole negligence of the Seller, its agents or employees.

14.  SAFETY:  Applicant must provide a safe delivery site and comply with all federal, state and local safety laws, rules, ordinances and other requirements.  Applicant shall indemnify and hold harmless Seller, its agents, employees and contractors from and shall defend any and all actions, claims, suits or proceedings that may subject Seller to liability arising from Applicant's failure or inability to properly handle the products or materials, or provide a safe delivery site.  Seller agrees that, when its employees, agents or contractors deliver the products or materials purchased hereunder it and they shall comply with all federal, state and local safety requirements.

15.  STOP WORK:  If credit conditions become unsatisfactory at any time prior to Seller's completion of the work hereunder, Applicant shall furnish adequate security upon Seller's request.  To the extent Applicant fails to provide adequate security, as determined in Seller's sole discretion, Seller may stop work.

16.  APPLICANT'S BANKRUPTCY:  Should Applicant become bankrupt or insolvent during the terms of this Application, this Application shall automatically terminate, provided such termination shall not prejudice Seller's rights to the amounts then due and owing.

17.  GOVERNING LAW:  Applicant acknowledges that all billings, accounts receivable, and credit functions of Seller are processed either through (i) the division or branch office from which Applicant makes purchases on credit pursuant to the credit granted hereunder, (ii) or any member of the Seller group of affiliated companies, or (iii) any other Seller related administrative entity.  Therefore, in the event of arbitration between Seller and Applicant, the arbitration, at the sole option of Seller, shall take place in any city within any State having proper jurisdiction.  Seller and Applicant agree that the laws of the State in which the Seller branch granting credit hereunder is located shall govern the interpretation of this Application.

18.  MANDATORY BINDING ARBITRATION.  ANY DISPUTE ARISING UNDER THIS APPLICATION SHALL BE SUBMITTED TO AND RESOLVED BY BINDING ARBITRATION IN ACCORDANCE WITH SECTION 17.  THE AMERICAN ARBITRATION ASSOCIATION SHALL CONDUCT THE ARBITRATION UNLESS THE PARTIES MUTUALLY AGREE TO USE AN ALTERNATIVE ARBITRATION SERVICE.  THE COSTS OF THE ARBITRATION SHALL BE BORNE EQUALLY BY THE PARTIES.  JUDGMENT UPON ANY AWARD MADE BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

19.  ASSIGNMENT:  Applicant shall not assign this Application without the prior written consent of Seller.  Notwithstanding the foregoing, Applicant shall have the right to assign this Application to any person or entity that acquires or succeeds to all or substantially all of Applicant's business or assets upon written notice to Seller in accordance with Section 25 so long as the assignee or transferee assumes and continues to fulfill and perform all of the assignor/transferor's obligations hereunder.  Notwithstanding anything contained herein to the contrary, Applicant shall remain liable for any and all obligations hereunder until Seller acknowledges and approves any assignment in writing.

20.  MODIFICATION AND WAIVER:  Neither this Application nor any term or provision hereof may be changed, waived, discharged, amended, modified or terminated orally, or in any manner other than by an instrument in writing signed by both parties hereto.  The failure of any party hereto to insist upon strict performance of any of the covenants and agreements herein contained, or to exercise any right or remedy herein conferred, in any one of more instances, shall not be construed to be a waiver or relinquishment of any such right or remedy, or of any other covenants or agreements, but the same shall be and remain in full force and effect.

21.  SEVERABILITY:  If any provision of this Application is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Application.

22.  FORCE MAJEURE:  A party is excused from its obligations under this Application (except for Applicant's obligations to pay any monies due and payable to Seller hereunder) to the extent such party (or a third party upon whom such party materially relies) sustains a loss by strike, fire, flood, windstorm, accident, act of God or other similar or dissimilar calamity or occurrence out of the reasonable control of such party which materially interferes with the conduct of such party's business, regardless of whether or not any such loss has been insured.

23.  RELATIONSHIP OF THE PARTIES:  Nothing contained in this Application shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent or partnership or of any association between any of the parties hereto other than independent contracting parties.

3

Initial

24. **COMPLIANCE WITH LAWS:** Applicant must comply with all federal, state and local laws, codes, regulations and ordinances. Applicant agrees to pay all applicable fees, licenses and taxes, including sales and use taxes and inspection costs

25. **INTERPRETATION AND CONSTRUCTION:** This Application has been reviewed and approved by each of the parties. In the event it should be determined that any provision of this agreement is uncertain or ambiguous, the language in all parts of this agreement shall be in all cases construed as a whole according to its fair meaning, not strictly construed for nor against either party, nor construed with any presumption or rule requiring that it might be construed against the party causing this agreement, or any part of it to be drafted.

26. **NOTIFICATION OF CHANGE IN OWNERSHIP:** Applicant hereby agrees to notify Seller, in writing, thirty (30) days prior to any change in ownership, name or business structure of Applicant and further agrees to be jointly and severally liable for all purchases by the new business structure and/or owners should said notification not be given. Seller may, regardless of the terms herein or on any invoice, require all outstanding account balances be paid in full on demand upon change in ownership and/or business structure, and may refuse to make further sales or extend credit pending approval of the new business structure's/owners' credit, which approval shall be at Seller's sole discretion

27. **CORPORATE AUTHORITY AND LIABILITY:** Applicant warrants and represents that it has the authority to enter into this Application and that any person signing this Application has been duly authorized to execute this Application for and on behalf of Applicant. Applicant acknowledges that Seller is relying upon the creditworthiness and financial ability of the owner(s) and upon the business name of Applicant, therefore, the owner(s) of Applicant shall be liable to Seller for all indebtedness of Applicant then existing and thereafter incurred.

28. **BUSINESS PURPOSES:** Applicant agrees, represents and warrants at the time of each purchase from Seller that its account shall be used only for purchases for business or commercial purposes, and not for personal, family or household purposes, and Applicant understands that Seller is relying upon this representation in entering into this Application. Applicant understands that its agreement not to use its account for personal, family or household purposes means that important duties imposed on Seller, and important rights conferred upon a consumer, pursuant to certain federal or state laws, will not apply to this account. Applicant further understands that Seller will be unable to determine whether any given purchase conforms to this Section 26. Applicant agrees that a breach of this Section 26 will not affect Seller's right to enforce your promise to pay for the credit extended to Applicant, including related charges, or to use any remedy legally available to Seller even if such remedy would not have been available had the account been established as a consumer credit account

29. **COUNTERPARTS:** This Application may be executed in any number of counterparts, each of which, when taken together, shall constitute one original document.

30. **THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT:** THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT PROHIBITS CREDITORS FROM DISCRIMINATING AGAINST CREDIT APPLICANTS ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX MARITAL STATUS, AGE (PROVIDED THE APPLICANT HAS THE CAPACITY TO ENTER INTO A BINDING CONTRACT), BECAUSE ALL OR PART OF THE APPLICANT'S INCOME DERIVES FROM ANY PUBLIC ASSISTANCE PROGRAM, OR BECAUSE THE APPLICANT HAS IN GOOD FAITH EXERCISED ANY RIGHT UNDER THE CONSUMER CREDIT PROTECTION ACT. THE FEDERAL AGENCY THAT ADMINISTERS COMPLIANCE WITH THIS LAW CONCERNING THIS CREDITOR IS FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, WASHINGTON, D.C. 20580.

31. **DENIAL:** If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact our office within 60 days from the date you were notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

Signature _____

Printed or Typed Name: Brian L. Green

Title: Chief Executive Officer

Date: December 21, 2016

Signature _____

Printed or Typed Name _____

Title _____

Date _____

4

Initial

Exhibit A

## OLDCASTLE PRECAST STANDARD TERMS AND CONDITIONS:

1. **ENFORCEABILITY/AUTHORIZATION FOR CREDIT REVIEW:** The "Applicant" is submitting this application for credit from Oldcastle Precast, Inc., including companies it now owns or hereafter may come into ownership thereof (hereinafter collectively referred to as the "Seller"). Applicant hereby authorizes Seller to obtain any and all information it deems necessary from any and all sources or references listed on this Application for Business Credit ("Application") and from any credit bureau, creditors of Applicant, trade references, banks or other financial institutions. Applicant further authorizes each of such sources, references, credit bureaus, creditors, banks and financial institutions to supply Seller such information as Seller deems necessary to assist it in its consideration of this Application.

2. **ENTIRE AGREEMENT:** These terms and conditions, in combination with the terms and conditions attached to Seller's invoice, purchase order and/or delivery ticket which are incorporated herein by reference (hereinafter collectively referred to as the "Terms"), represent the entire agreement between the parties. Any terms, including those on any Applicant purchase order, which are different, conflicting, add to, modify, supersede or otherwise alter the Terms without express written approval signed by an authorized representative of the Seller are hereby rejected.

3. **PAYMENT TERMS:** If this Application is accepted, Applicant agrees to pay in full the invoice price of all purchases now or hereafter made from Seller promptly when due according to the N30 terms set forth in this APPLICATION, without any retention. If the total invoice price is not paid in full on or before the due date, interest will accrue on the unpaid balance at the greater of 1.5% per month or the maximum rate allowed by the state laws of Seller's principal place of business, whichever is greater. If Applicant should fail to fulfill any of its obligations under this Application, or if Seller in good faith deems itself insecure because the prospect for payment is impaired or the prospect of performance of any provision of this Application is impaired, or if a default occurs for any other reason provided in this Application, then Seller, at its option and without notice, may declare the entire unpaid balance owed by Applicant under this Application to be immediately due and payable, or terminate the credit privileges of Applicant under the Application, or both. Applicant agrees to pay in full all costs and expenses incurred by Seller in collecting the amounts owed by Applicant under this Application, including any and all court costs, attorneys' fees and collection costs. Payments received will be applied against items on unpaid invoices in an order and sequence determined by Seller in its sole discretion. *Checks returned unpaid by your bank are automatically deposited a second time in an effort to clear your payments before they are returned to Seller. Returned checks regardless of the reason, are subject to a service charge in an amount not to exceed applicable law.*

   When you provide payments, you authorize us to either use the information from your check to make an electronic fund transfer (EFT) from your account, or to process the payment as a check transaction. When paying by check, you authorize us or our legal agent to process the check by traditional deposit, electronically (EFT), or through a preauthorized draft. You understand that as this may be an electric transaction, these funds may be withdrawn from account as soon as the day in which it is received. You will not dispute us debiting your deposit account, so long as the amount corresponds to the amount indicated on the check(s). In the event that the transaction is returned unpaid for any reason, you authorize us or our agent to collect a returned payment fee up to the maximum amount as permitted by law.

4. **CREDIT DISCRETION:** Notwithstanding anything contained herein to the contrary, this Application shall not be construed as imposing any obligation on the part of Seller to furnish credit in any amount, and Seller, in its sole and absolute discretion, may terminate or limit the credit privileges of Application without prior notice to Applicant. The exercise of this discretion shall be in addition to any other right or remedy which Seller may have pursuant to Application or pursuant to applicable law.

5. **BANK AUTHORIZATION:** In order for Oldcastle to acquire the necessary information from your bank, by signing this application you authorize your bank to release the information needed on any or all of your accounts listed above in order to process your credit application.

6. **RETENTION:** If retention is applicable for a project, payment in full for the retention balance will not exceed 45 days from installation. Based in the applicable prompt payment status of the applicable state, a 2% penalty will apply to the outstanding balance each month the retention balance is past due.

7. **DELIVERY OF MATERIALS:** Unless otherwise agreed in writing, prices include delivery F.O.B. Job Site. "F.O.B. Job Site" means trucks carrying maximum legal loads operating under their own power, with delivery as close to the job or accessible storage area as Seller deems practical. Applicant shall provide suitable access for Seller's delivery trucks (without pushing or towing of the truck), traffic control and labor (at least two (2) men) to assist in the off-loading of materials. Applicant agrees that the receiving/installation location will be properly prepared and ready to receive the materials at the time specified in writing. Standby time in excess of one (1) hour from the time of arrival of Seller's trucks at the designated point will be at Applicant's expense and charged to its account.

8. **RISK OF LOSS:** When materials are sold "F.O.B. Plant," delivery of materials therefor shall be accomplished at Seller's plant, and Applicant shall bear all risks of loss, damage, injury or liability associated with transportation and placement of materials. When materials are specified to be sold "F.O.B. Job Site," delivery shall be accomplished at agreed upon Applicant job site, and Applicant bears all risk of loss or damage to the materials once delivered by Seller.

9. **SECURITY INTEREST:** Applicant hereby grants Seller a security interest in all products, materials, component and related parts sold hereunder, whether or not the same become fixtures. Should Applicant fail to pay all or portions of any amounts due and payable hereunder, breach this Application or otherwise default, Seller shall have all rights and remedies as a secured party available to it under law or equity including but not limited to rights of self-help (i.e., without notice) to repossess all or any portion of such materials.

10. **PRE-ENGINEERED PRODUCTS:** Unless otherwise agreed to by Seller in writing, all materials sold by Seller hereunder are pre-engineered products manufactured in accordance with standard catalog data, and are not intended for unusual or specific applications. If Applicant requires specially engineered materials, Applicant must approve in writing all applicable specifications and drawings for such specially engineered materials before Seller will commence production of the same.

11. **WARRANTY, DISCLAIMER LIMITATIONS ON LIABILITY:** Unless otherwise agreed to in writing by both parties, Seller warrants only that, for a period of one (1) year after installation, Seller products or materials sold hereunder shall be free from material defects in workmanship. Any failure by Applicant to timely pay any or all amounts due hereunder shall automatically void this express warranty made by Seller. No agent, employee or representative of Seller has authority to bind Seller to any affirmation, representation or warranty concerning any products or materials sold to Applicant, unless and until said affirmation, representation or warranty is expressed in writing and signed by an authorized Seller representation. The description of the goods contained herein is the sole basis for this agreement, and no statements or representations other than those embodied herein have been made or relied upon.

2

Initial

Exhibit B

EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER DOES NOT MAKE AND SPECIFICALLY EXCLUDES AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS, IMPLIED, OR ARISING BY TRADE USAGE OR COURSE OF DEALING, INCLUDING WITHOUT LIMITATION, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, AND ANY IMPLIED INDEMNITIES.  IN NO EVENT WILL SELLER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE OR INCIDENTAL DAMAGES (INCLUDING BUT NOT LIMITED TO DAMAGES FOR LOST PROFITS, BUSINESS INTERRUPTION, AND LOSS OF BUSINESS INFORMATION) ARISING OUT OF THE USE, INABILITY TO USE OR FAILURE OF ANY MATERIALS OR PRODUCTS SOLD HEREUNDER, EVEN IF SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  ANY DEFECTS CAUSED BY IMPROPER USE, DESIGN, INSTALLATION OR MAINTENANCE VOIDS ANY AND ALL WARRANTIES EXPRESSED OR IMPLIED, AND WHICH OTHERWISE APPLY.   IT IS AGREED THAT SELLER SHALL NOT BE RESPONSIBLE FOR ANY DAMAGES WHICH EXCEED THE INVOICE PRICE OF ANY MATERIALS WHICH ARE DETERMINED TO BE DEFECTIVE OR NON-CONFORMING.

12. **LIMITED REMEDY:** For Defective Products/Materials.  Should the products or materials sold hereunder breach the limited warranty made by Seller in Section 11 above, Applicant must provide written notice to Seller of such breach within forty-eight (48) hours of Applicant's initial knowledge of said defect.  Applicant hereby waives and relinquishes all actions and claims for replacement and repair thereof if Applicant fails to deliver such written notice within the applicable 48-hour period.  Upon Seller's receipt of timely written notice, Seller's sole obligation and Applicant's exclusive remedy shall be the repair or replacement of the defective products or materials within a commercially reasonable period of time.  Under no circumstances shall Seller be liable for any liability, damages or costs due to delays in the approval, delivery or installation of any Seller products or materials.  Applicant understands and agrees that "but for" this limited remedy and Seller's limitations on liability as stated in Section 9 above, Seller would not be able to sell its products and materials to Applicant at the agreed prices and that the warranty disclaimers, the limitations on liability, and the limited remedy described in this Section 10 constitute an agreed allocation of risk between Applicant and Seller.

13. **INDEMNIFICATION:** Applicant agrees to defend, indemnify and hold Seller harmless from and against all claims, losses, damages, penalties, costs and/or expenses for damage to property of whatsoever kind or nature, or injury to persons arising out of performance under this Application by Applicant, its agents or employees.  Applicant's duty to indemnify Seller for liability and/or damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of Seller and Applicant shall apply only to the extent of the negligence of Applicant, its agents or employees.  Applicant's indemnification obligations hereunder shall exclude claims, losses, liabilities, costs or expenses for damage to property of whatsoever kind or nature, or injury to persons arising out of performance under this Agreement from the sole negligence of the Seller, its agents or employees.

14. **SAFETY:** Applicant must provide a safe delivery site and comply with all federal, state and local safety laws, rules, ordinances and other requirements.  Applicant shall indemnify and hold harmless Seller, its agents, employees and contractors from, and shall defend any and all actions, claims, suits or proceedings that may subject Seller to liability arising from Applicant's failure or inability to properly handle the products or materials, or provide a safe delivery site.  Seller agrees that, when its employees, agents or contractors deliver the products or materials purchased hereunder, it and they shall comply with all federal, state and local safety requirements.

15. **STOP WORK:** If credit conditions become unsatisfactory at any time prior to Seller's completion of the work hereunder, Applicant shall furnish adequate security upon Seller's request.  To the extent Applicant fails to provide adequate security, as determined in Seller's sole discretion, Seller may stop work.

16. **APPLICANT's BANKRUPTCY:** Should Applicant become bankrupt or insolvent during the terms of this Application, this Application shall automatically terminate, provided such termination shall not prejudice Seller's rights to the amounts then due and owing.

17. **GOVERNING LAW:** Applicant acknowledges that all billings, accounts receivable, and credit functions of Seller are processed either through (i) the division or branch office from which Applicant makes purchases on credit pursuant to the credit granted hereunder; (ii) or any member of the Seller group of affiliated companies; or (iii) any other Seller related administrative entity.  Therefore, in the event of arbitration between Seller and Applicant, the arbitration, at the sole option of Seller, shall take place in any city within any State having proper jurisdiction.  Seller and Applicant agree that the laws of the State in which the Seller branch granting credit hereunder is located shall govern the interpretation of this Application.

18. **MANDATORY BINDING ARBITRATION.  ANY DISPUTE ARISING UNDER THIS APPLICATION SHALL BE SUBMITTED TO AND RESOLVED BY BINDING ARBITRATION IN ACCORDANCE WITH SECTION 17.  THE AMERICAN ARBITRATION ASSOCIATION SHALL CONDUCT THE ARBITRATION UNLESS THE PARTIES MUTUALLY AGREE TO USE AN ALTERNATIVE ARBITRATION SERVICE.  THE COSTS OF THE ARBITRATION SHALL BE BORNE EQUALLY BY THE PARTIES.  JUDGMENT UPON ANY AWARD MADE BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.**

19. **ASSIGNMENT:** Applicant shall not assign this Application without the prior written consent of Seller.  Notwithstanding the foregoing, Applicant shall have the right to assign this Application to any person or entity that acquires or succeeds to all or substantially all of Applicant's business or assets upon written notice to Seller in accordance with Section 25, so long as the assignee or transferee assumes and continues to fulfill and perform all of the assignor/transferor's obligations hereunder.  Notwithstanding anything contained herein to the contrary, Applicant shall remain liable for any and all obligations hereunder until Seller acknowledges and approves any assignment in writing.

20. .**MODIFICATION AND WAIVER:** Neither this Application nor any term or provision hereof may be changed, waived, discharged, amended, modified or terminated orally, or in any manner other than by an instrument in writing signed by both parties hereto.  The failure of any party hereto to insist upon strict performance of any of the covenants and agreements herein contained, or to exercise any right or remedy herein conferred, in any one of more instances, shall not be construed to be a waiver or relinquishment of any such right or remedy, or of any other covenants or agreements, but the same shall be and remain in full force and effect.

21. **SEVERABILITY:** If any provision of this Application is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Application.

22. **FORCE MAJEURE:** A party is excused from its obligations under this Application (except for Applicant's obligations to pay any monies due and payable to Seller hereunder) to the extent such party (or a third party upon whom such party materially relies) sustains a loss by strike, fire, flood, windstorm, accident, act of God or other similar or dissimilar calamity or occurrence out of the reasonable control of such party which materially interferes with the conduct of such party's business, regardless of whether or not any such  loss has been insured.

23. **RELATIONSHIP OF THE PARTIES:** Nothing contained in this Application shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent or partnership or of any association between any of the parties hereto other than independent contracting parties.

3

Initial

24. **COMPLIANCE WITH LAWS:** Applicant must comply with all federal, state and local laws, codes, regulations and ordinances. Applicant agrees to pay all applicable fees, licenses and taxes, including sales and use taxes and inspection costs.

25. **INTERPRETATION AND CONSTRUCTION:** This Application has been reviewed and approved by each of the parties. In the event it should be determined that any provision of this agreement is uncertain or ambiguous, the language in all parts of this agreement shall be in all cases construed as a whole according to its fair meaning, not strictly construed for nor against either party, nor construed with any presumption or rule requiring that it might be construed against the party causing this agreement, or any part of it to be drafted.

26. **NOTIFICATION OF CHANGE IN OWNERSHIP:** Applicant hereby agrees to notify Seller, in writing, thirty (30) days prior to any change in ownership, name or business structure of Applicant and further agrees to be jointly and severally liable for all purchases by the new business structure and/or owners should said notification not be given. Seller may, regardless of the terms herein or on any invoice, require all outstanding account balances be paid in full on demand upon change in ownership and/or business structure, and may refuse to make further sales or extend credit pending approval of the new business structure's/owners' credit, which approval shall be at Seller's sole discretion.

27. **CORPORATE AUTHORITY AND LIABILITY:** Applicant warrants and represents that it has the authority to enter into this Application and that any person signing this Application has been duly authorized to execute this Application for and on behalf of Applicant. Applicant acknowledges that Seller is relying upon the creditworthiness and financial ability of the owner(s) and upon the business name of Applicant; therefore, the owner(s) of Applicant shall be liable to Seller for all indebtedness of Applicant then existing and thereafter incurred.

28. **BUSINESS PURPOSES:** Applicant agrees, represents and warrants at the time of each purchase from Seller that its account shall be used only for purchases for business or commercial purposes, and not for personal, family or household purposes, and Applicant understands that Seller is relying upon this representation in entering into this Application. Applicant understands that its agreement not to use its account for personal, family or household purposes means that important duties imposed on Seller, and important rights conferred upon a consumer, pursuant to certain federal or state laws, will not apply to this account. Applicant further understands that Seller will be unable to determine whether any given purchase conforms to this Section 26. Applicant agrees that a breach of this Section 26 will not affect Seller's right to enforce your promise to pay for the credit extended to Applicant, including related charges, or to use any remedy legally available to Seller even if such remedy would not have been available had the account been established as a consumer credit account.

29. **COUNTERPARTS:** This Application may be executed in any number of counterparts, each of which, when taken together, shall constitute one original document.

30. **THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT:** THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT PROHIBITS CREDITORS FROM DISCRIMINATING AGAINST CREDIT APPLICANTS ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, MARITAL STATUS, AGE (PROVIDED THE APPLICANT HAS THE CAPACITY TO ENTER INTO A BINDING CONTRACT), BECAUSE ALL OR PART OF THE APPLICANT'S INCOME DERIVES FROM ANY PUBLIC ASSISTANCE PROGRAM, OR BECAUSE THE APPLICANT HAS IN GOOD FAITH EXERCISED ANY RIGHT UNDER THE CONSUMER CREDIT PROTECTION ACT. THE FEDERAL AGENCY THAT ADMINISTERS COMPLIANCE WITH THIS LAW CONCERNING THIS CREDITOR IS FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, WASHINGTON, D.C. 20580.

31. **DENIAL:** If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact our office within 60 days from the date you were notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.


Signature _____          Signature _____


Printed or Typed Name _____          Printed or Typed Name _____


Title _____          Title _____


Date _____          Date _____


4

Initial ____

Exhibit B

**GTI**
Green Tanner Industrial
CONSTRUCTION, LLC

| | |
|---|---|
| Purchase Order # | MM00008MH |
| Date: | 6-Nov-20 |
| Order Given By: | Matt King |

Bill To:
Green-Tanner Industrial LLC
1330 W. Boxwood Ave.
Gilbert, AZ. 85233
P: (480) 982-0695
F: (480) 982-0703

Ship To:
Will update address
Per delivery

| | |
|---|---|
| Vendor: | Old Castle |
| Branch: | |
| Attn: | Sergio Salcido |

| # | Desciption | Unit | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| 1 | Precast 444-LA with 332P Gal. Hatch | EA | 972 | $ 1,609.00 | $ 1,563,948.00 |
| 2 | Included Rack Package | EA | 972 | $ - | $ - |
| 3 | Mastic Roll | EA | 1,944 | $ - | $ - |
| 4 | Freight | EA | 972 | $ 105.00 | $ 102,060.00 |
| 5 | Precast 6464-LAS with 332P Gal. Hatch | EA | 210 | $ 3,633.00 | $ 762,930.00 |
| 6 | Included Rack Package | EA | 210 | $ - | $ - |
| 7 | Mastic Roll | EA | 1260 | $ - | $ - |
| 8 | Freight | EA | 210 | $ 413.00 | $ 86,730.00 |
| 9 | | | | $ - | $ - |
| 10 | | | | $ - | $ - |
| 11 | | | | $ - | $ - |
| 12 | | | | $ - | $ - |
| 13 | | | | $ - | $ - |
| 14 | | | | $ - | $ - |
| 15 | | | | $ - | $ - |
| 16 | | | | $ - | $ - |
| 17 | | | | $ - | $ - |
| 18 | | | | $ - | $ - |
| 19 | | | | $ - | $ - |
| 20 | | | | $ - | $ - |
| 21 | | | | $ - | $ - |
| 22 | | | | $ - | $ - |
| 23 | | | | $ - | $ - |
| 24 | | | | $ - | $ - |
| 25 | | | | $ - | $ - |
| 26 | | | | $ - | $ - |
| 27 | | | | $ - | $ - |
| 28 | | | | $ - | $ - |

**PO Must be on all invoices to avoid delayed payment**
**Please EMAIL invoice to: admin@greentanner.com**

See Reverse Side for terms and conditions

| | |
|---|---|
| Sub Total | $ 2,515,668.00 |
| Sales Tax | $ |
| Total | $ 2,515,668.00 |

Exhibit C

## Purchase Order Terms and Conditions

1)  ACCEPTANCE: Acceptance is limited to the terms of this Purchase Order ("PO"), including the terms and conditions set forth herein. Seller's shipment or delivery of goods or performance of services ordered constitutes Seller's acceptance of such terms irrespective of any additional or different terms

contained in Seller's quotation, acknowledgement or other communications. No such additional or different terms shall be binding upon Green-Tanner Industrial, LLC. ("GTI"), unless set forth in a written document signed by GTI's authorized representatives.

2)  PAYMENT: Prices to be paid for goods or services ordered are the prices listed on attached PO number referenced above. Prices paid for goods shall include all packing, shipping and delivery charges, unless otherwise described on PO. Terms are pay when paid.

If the price is not stated on this PO, items shall be invoiced at the price last quoted or charge to GTI, and this PO must not be filed at a higher price without prior written consent from GTI.

3) Cancellation: This PO may, without prior notification, be cancelled at any time without penalty to GTI.

4)  INVOICING: Invoices for goods or services furnished by Seller under this PO shall be submitted to GTI no later than the seventh (7th) day of the month following delivery of the goods or services.

Each invoice shall reference the PO Number, description of goods or services, unit price and extended totals. GTI shall pay invoices within the terms listed above provided, that no payments by GTI under this PO shall be construed to be an acceptance of improper, defective or unsuitable goods or services, nor as evidence of the performance of any obligation of Seller specified in this PO. Or any other disputed claim which could delay processing of invoice.

5)  DELIVERY: Time is of the essence in this PO. Unless a delivery date is specified in this PO, all deliveries of goods or services shall conform to the date(s) specified on any schedule that is made a part of this PO, or as directed from time to time by GTI. Should delivery for any reason fail to be timely,

Seller shall be liable for all damages incurred by GTI as a result of such delay, including without limitation, any liquidated damages owed by GTI. In no event shall Seller be entitled to an extension of time for delivery beyond that allowed to GTI. All goods furnished under this PO shall be delivered F.O.B. with freight allowed to job site or place of delivery designated by GTI. Notwithstanding the terms of delivery, risk of loss shall pass to Buyer only after delivery to the job site or other place designated by GTI. All items listed on this PO are subjected to the approval of GTI. Items rejected by GTI for not conforming to specifications in this order shall be at Seller's risk.

6)  WARRANTY: Seller expressly warrants that all goods and services covered by this PO have an unencumbered title, are free from defects, latent and patent, shall be of good and merchantable quality for the intended purpose for which it is sold, fit for its intended use.

It shall not infringe on any patent, trademark or copyright and will exactly conform to this PO and to all applicable specifications, drawings, descriptions, and samples furnished by GTI. Seller further warrants that any goods or services provided shall be free of any and all defects for a period of eighteen (18) months following delivery and acceptance by GTI. Seller shall provide all written warranties, equipment manuals and the like to GTI and shall transfer and assign all manufacturers' warranties to GTI. Such warranties and guarantees in no way limit GTI's remedy for breach by Seller of the terms of this PO. This warranty shall survive delivery and shall not be deemed waived by GTI's acceptance or the payment of such goods or services.

7)  INDEMNITY: Seller agrees to indemnify, save harmless and release GTI, its officers, agents, owners, and employees from and against any and all loss damages, injury, liability, suits and proceedings arising out of the performance of this PO by the Seller, its officers, agents, volunteers, employees or sub-contractors. This indemnification shall extend to claims occurring after this PO is terminated as well as while it is in force. The indemnification shall apply regardless of any action and or passive negligent act or omission of Owner, Contractor(s) or GTI or their agents or employees. However, the Seller shall not be obligated to indemnify any party for claims arising from the sole negligence or willful misconduct of owner, contractor(s) of GTI or their agents or employees, or caused solely by the design provided by such parties. The indemnification herein set forth shall not be limited by any other provision of the PO. Any liability of GTI arising out of or in connection with this PO whether based in contract or tort shall not exceed the amount of the PO. All work covered by the PO done at the site or in preparing or delivery materials or equipment to the site shall be at the sole right of the Seller until the completed work is accepted by GTI.

8)  INSURANCE: Seller agrees to maintain and, if requested, provide certificates of insurance evidencing coverage of: (a) Worker's Compensation – Statutory Limitation; (b)

Automobile Liability - $2,000,000; and, (c) General Liability - $5,000,000. Additional Insured Endorsements and Subrogation Waivers shall also be made available to GTI upon request.

9)  INDEPENDENT CONTRACTOR: Seller shall be an independent contractor, and shall have no authorization, express or implies to bind GTI to any agreements, settlements, liability or understanding whatsoever, and agrees not to perform any acts as agent for GTI.

10)  DEFAULT: If Seller defaults in the performance of any of its obligations under this PO, GTI may, at its election, perform Seller's obligations including the purchasing of goods including equipment and materials and services elsewhere, and seller shall pay an excess in cost of such goods or services over and

above the price specified in this PO, together with any additional expenses incurred by Buyer in connection therewith; provided, however, that Seller shall not be liable under this paragraph if such default is caused by a force majeure event. In such event, Seller shall immediately give notice to Buyer of such force majeure event. Furthermore, if Seller defaults in the performance of any of its obligations hereunder or is delayed in the furnishing of the materials set out herein for any cause whatsoever, including default or delay caused by a force majeure event, GTI may, at its option, terminate this PO and all further liability or obligation of GTI to Seller shall cease, except liability for the reasonable value of the service, equipment and materials previously furnished by Seller and accepted by GTI, which shall not exceed the agreed price for the materials, less any amounts due to GTI under this Section 9.

11)  ATTORNEYS' FEES: Should any legal proceeding arise out of this PO, the prevailing party shall be entitled to recover its costs and attorneys' fees.

12)  SEVERABILITY/ INTERGRATION:  If a court finds part of this PO to be invalid or if the law nullifies part of this PO, all other conditions shall remain intact. This PO supersedes any and all other agreements, either oral or in writing, between the parties with respect to the subject matter of this PO and contains all of the covenants and agreements between the parties.

13)  ASSIGNMENT: Seller shall not assign or sublet this PO or any part thereof, including any payments due or to become due thereon, without the written consent of GTI.

14)  LAWS AND JURISDICTION: Seller shall strictly conform with all applicable laws, regulations, codes, safety orders, labor agreements and working conditions to which it is subject. The terms, conditions, and provisions of this PO shall be governed by the laws of the State of Arizona.

_____
Vendor / Subcontractor Signature

_____
Date

_____
Printed Name and Title

Exhibit C

Page : 1 of 3

## Oldcastle Infrastructure™
A CRH COMPANY

# STATEMENT

Remittance Address

P.O. BOX 742387

Los Angeles, CA 90074-2387

Phone : (470) 602-2019 | Fax : | Email : warren.haslauer@oldcastle.com

| Customer #: | 040003413 |
|---|---|
| Customer Name: | Green Tanner Industrial Construction |
| Date: | 10/1/2021 |

Bill To:    Green Tanner Industrial Construction
1330 W BOXWOOD AVE
GILBERT, AZ 85233 1813

| Invoice# | Create Date | Due Date | PO# | SO# | NTO Sent | Ship To Name | Amount | Balance | Tax | Payments | Days Past Due | Invoice PDF | Billed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 040097721 | 2/23/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 52,574.10 | $ 52,574.10 | $ 0.00 | $ 0.00 | -29 | | |
| 040097742 | 2/24/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 65,091.75 | $ 65,091.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040097783 | 2/26/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 26,125.64 | $ 26,125.64 | $ 0.00 | $ 0.00 | -29 | | |
| 040097805 | 3/1/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 29,307.12 | $ 29,307.12 | $ 0.00 | $ 0.00 | -29 | | |
| 040097638 | 2/17/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 76,977.02 | $ 76,977.02 | $ 0.00 | $ 0.00 | -29 | | |
| 040097698 | 2/22/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 24,325.50 | $ 24,325.50 | $ 0.00 | $ 0.00 | -29 | | |
| 040097821 | 3/2/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 18,544.53 | $ 18,544.53 | $ 0.00 | $ 0.00 | -29 | | |
| 040097844 | 3/3/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 59,807.64 | $ 59,807.64 | $ 0.00 | $ 0.00 | -29 | | |
| 040097859 | 3/4/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 52,929.00 | $ 52,929.00 | $ 0.00 | $ 0.00 | -29 | | |
| 040097873 | 3/5/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040C06168 | 3/8/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ -4,179.85 | $ -4,179.85 | $ 0.00 | $ 0.00 | -29 | | |
| 040C06170 | 3/8/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ -1,341.53 | $ -1,341.53 | $ 0.00 | $ 0.00 | -29 | | |

Exhibit D

Page : 2 of 3

| Invoice# | Create Date | Due Date | PO# | SO# | NTO Sent | Ship To Name | Amount | Balance | Tax | Payments | Days Past Due | Invoice PDF | Billed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 040C06169 | 3/8/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ -2,596.09 | $ -2,596.09 | $ 0.00 | $ 0.00 | -29 | | |
| 040097895 | 3/8/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 48,518.25 | $ 48,518.25 | $ 0.00 | $ 0.00 | -29 | | |
| 040097910 | 3/9/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 19,585.50 | $ 19,585.50 | $ 0.00 | $ 0.00 | -29 | | |
| 040097924 | 3/10/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 20,334.49 | $ 20,334.49 | $ 0.00 | $ 0.00 | -29 | | |
| 040097946 | 3/11/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040097957 | 3/15/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 15,731.74 | $ 15,731.74 | $ 0.00 | $ 0.00 | -29 | | |
| 040097969 | 3/15/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 34,377.52 | $ 34,377.52 | $ 0.00 | $ 0.00 | -29 | | |
| 040097994 | 3/17/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 56,709.00 | $ 56,709.00 | $ 0.00 | $ 0.00 | -29 | | |
| 040098038 | 3/19/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040098108 | 3/29/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 64,855.15 | $ 64,855.15 | $ 0.00 | $ 0.00 | -29 | | |
| 040098126 | 3/30/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040098138 | 3/31/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 24,325.50 | $ 24,325.50 | $ 0.00 | $ 0.00 | -29 | | |
| 040098197 | 4/5/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040098205 | 4/6/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040098213 | 4/7/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 55,628.25 | $ 55,628.25 | $ 0.00 | $ 0.00 | -29 | | |
| 040098243 | 4/9/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 24,325.50 | $ 24,325.50 | $ 0.00 | $ 0.00 | -29 | | |
| 040098337 | 4/16/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 105,858.00 | $ 105,858.00 | $ 0.00 | $ 0.00 | -29 | | |
| 040098332 | 4/14/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 12,162.75 | $ 12,162.75 | $ 0.00 | $ 0.00 | -29 | | |
| 040098352 | 4/19/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ 53,503.69 | $ 53,503.69 | $ 0.00 | $ 0.00 | -29 | | |
| 040C06280 | 4/27/2021 | 10/30/2021 | MM00008MH | S097395 | No | Columbus NM Vaults | $ -2,127.26 | $ -2,127.26 | $ 0.00 | $ 0.00 | -29 | | |
| Invoice# | Create Date | Due Date | PO# | SO# | NTO Sent | Ship To Name | Amount | Balance | Tax | Payments | Days Past Due | Invoice PDF | Billed |

Exhibit D

| 040099708 | 8/27/2021 | 10/31/2021 | MM0008MH | S097395 | No | Columbus NM Vaults | $ 189,045.99 | $ 189,045.99 | $ 0.00 | $ 0.00 | -30 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Total : $ 1,193,375.40

**Reminder:** Please include customer number 040003413 on your check

**Terms:** from invoice date

REMITTANCE

Customer Name:     Green Tanner Industrial Construction

Customer #:          040003413

Date:                10/1/2021

Amount Due:          $ 1,193,375.40

Amount Enclosed:

Exhibit D



**Liberty Mutual.**
SURETY

Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA. 19462-1644
Ph. (610) 832-8240

## SUBCONTRACT PAYMENT BOND

Bond Number: 609203998

KNOW ALL MEN BY THESE PRESENTS, that we Green-Tanner Industrial Construction, LLC
1330 W. Boxwood Ave., Gilbert, AZ 85233 , as principal (the "Principal"),
and Liberty Mutual Insurance Company, a Massachusetts stock insurance company, as surety (the "Surety"), are
held and firmly bound unto SLSCO LTD.
6702 Broadway St., Galveston, TX 77554 , as obligee (the "Obligee"),
in the penal sum of Eleven Million Three Hundred Seventy Two Thousand Six Hundred Thirty Seven
Dollars and 54/100 Dollars ($ 11,372,637.54 ),
for the payment of which sum well and truly to be made, the Principal and the Surety, bind ourselves, our heirs,
executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has by written agreement dated November 25, 2020 , entered into a
subcontract (the "Subcontract") with the Obligee for PO #4, El Paso 1 (46 miles), FY19 Pedestrian & Vehicle
Fence Replacement, Contract No. W912PP19C0018

in accordance with drawings and specifications prepared by

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall promptly
make payment to all Claimants, as hereinafter defined, for all labor and material used or reasonably required for
use in the performance of the Subcontract, then this obligation shall be null and void; otherwise it shall remain in
full force and effect.

PROVIDED AND SUBJECT TO THE CONDITIONS PRECEDENT:

1.  A "Claimant" is defined as one having a direct subcontract with the Principal or with a subcontractor of the
    Principal for labor, material, or both, used or reasonably required for use in the performance of the Subcontract,
    labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone
    service or rental of equipment directly applicable to the Subcontract.

2.  The Principal and the Surety hereby jointly and severally agree with the Obligee that every Claimant, who has
    not been paid in full before the expiration of a period of ninety (90) days (or such lesser or greater time period
    as otherwise permitted by relevant law) after the date on which the last of such Claimant's work or labor was
    done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such
    Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant, and have
    execution thereon. The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

3.  No suit or action shall be commenced hereunder by any Claimant:

    (a) Unless Claimant, other than one having a direct subcontract with the Principal, shall have given written
        notice to the Principal and the Surety within ninety (90) days (or such lesser or greater time period as
        otherwise permitted by relevant law) after such Claimant did or performed the last of the work or labor, or
        furnished the last of the materials for which said claim is made, stating with substantial accuracy the
        amount claimed and the name of the party to whom the materials were furnished, or for whom the work or
        labor was done or performed. Such notice shall be served by mailing the same by registered mail or
        certified mail, postage prepaid, in separate envelopes addressed to the Principal and Surety. The Principal
        may be served at any place where an office is regularly maintained for the transaction of business, or in
        any manner in which legal process may be served in the state in which the aforesaid project is located,
        save that such service need not be made by a public officer. The Surety may be served to the attention of
        The Surety Law Department at the address above.

    (b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the
        state in which the project, or any part thereof, is situated, or in the United States District Court for the
        district in which the project, or any part thereof, is situated, and not elsewhere.

(c) After the expiration of one (1) year (or such lesser time period as otherwise permitted by relevant law) from the date on which the Principal ceased work on the Subcontract. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

4. Surety shall have no liability to any Claimant under this Bond for any amount unless it is due and owing to the Claimant by the Principal pursuant to the express terms of the contract between the Principal and Claimant. The Bond incorporates all of the Principal's contractual defenses, including but not limited to pay-if-paid provisions, whereby payment to the Claimant is subject to the condition precedent of the Obligee's payment to the Principal, and other limitations on amounts due under the contract between Principal and Claimant.

5. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens, which may be filed of record against such improvement, whether or not a claim for the amount of such lien be presented under and against this bond.

IN WITNESS WHEREOF, the said Principal and Surety have signed and sealed this instrument this ___2nd___ day of ____December____, __2020__.

WITNESS / ATTEST

Green-Tanner Industrial Construction, LLC
(Principal)

By: _____ (Seal)
Name:
Title:

LIBERTY MUTUAL INSURANCE COMPANY
(Surety)

By: _____
Laurie Pflug            Attorney-in-Fact

Surety Phone No.   617-357-9500

Exhibit E

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated. Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees. To confirm the validity of this Power of Attorney call 610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

**SURETY**

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, **Laurie Pflug** _____ _____ of the city of _____ **Scottsdale** _____, state of _____ **AZ** _____ its true and lawful attorney-in-fact, with full power and authority hereby conferred to sign, execute and acknowledge the following surety bond:

Principal Name: **Green-Tanner Industrial Construction, LLC**

Obligee Name: **SLSCO LTD.**

Surety Bond Number: **609203998**          Bond Amount: **See Bond Form**

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 12th day of December, 2018.

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA    ss
COUNTY OF MONTGOMERY

On this 12th day of December, 2018, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of Liberty Mutual Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company do hereby certify that this power of attorney executed by said Companies is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this ___ 2nd ___ day of ___ December ___, 2020.



By: _____
Renee C. Llewellyn, Assistant Secretary

---

Exhibit E